IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:20-cv-01031-SB |
| Plaintiff, | **FINDINGS AND RECOMMENDATION** |
| v. | |
| MORSE E. STEWART *et al.*, | |
| Defendants. | |

**BECKERMAN, U.S. Magistrate Judge.**

The United States filed this action on June 26, 2020, seeking to reduce to judgment assessments against defendant Morse Stewart ("Stewart") for unpaid income taxes and to foreclose tax liens through a sale of his real property in Milwaukie, Oregon. Before the Court are the United States' motions for default judgment and for appointment of a receiver.

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1340 (giving district courts jurisdiction over "any civil action arising under any Act of Congress providing for internal revenue"); 28 U.S.C. § 1345 (giving district courts jurisdiction over "all civil actions . . . commenced by the United States"), 26 U.S.C. § 7402 (giving district courts jurisdiction to render judgments "for the enforcement of the internal revenue laws"), and 26

PAGE 1 – FINDINGS AND RECOMMENDATION

U.S.C. § 7403 (giving district courts jurisdiction over an action to enforce a tax lien). For the reasons explained below, the Court recommends that the district judge grant the United States' motions for default judgment and appointment of a receiver.

## PROCEDURAL BACKGROUND

In addition to Stewart, who the United States sues both individually and in his capacity as co-trustee of Castle Keep Trust ("CKT") and AJM Management ("AJM"),[1] the complaint also names two other individuals and several entities as defendants based on their potential interests in the subject property: (1) Jeanine Stewart, Stewart's ex-wife, who the United States also sues both individually and in her capacity as co-trustee of CKT and AJM; (2) Bank of New York Mellon ("Bank of New York"); (3) U.S. Bank National Association ("U.S. Bank"); (4) God's Will Be Done, an inactive religious nonprofit entity that was located at the Stewarts' former primary residence; (5) Brian Fergusson ("Fergusson"); (6) Columbia Collection Service, Inc. ("Columbia Collection"); and (7) Clackamas County, Oregon (the "County").[2] (Compl. ¶¶ 7-15.)

The United States served Columbia Collection on July 2, 2020; U.S. Bank on July 8, 2020; God's Will Be Done on July 14, 2020; and the Stewarts on September 10, 2020. (ECF Nos. 5-6, 8, 14-15.) The Clerk of Court entered default against those defendants (the "defaulted defendants") on January 4, 2021, because they failed to appear or respond to the complaint.[3] (ECF No. 26.)

---

[1] CKT and AJM are "fictitious trusts" and the Stewarts' "nominees or alter-egos." (Compl. ¶ 8.)

[2] The United States voluntarily dismissed Fergusson on September 3, 2020, because he signed a disclaimer of interest in the subject property. (ECF No. 12 at 1-4.)

[3] The title report for the subject property reflects that (1) Columbia Collection holds a judgment on the property in the amount of $1,267.29; (2) God's Will Be Done filed several construction liens on the property; and (3) at one point, the deed of trust was assigned to U.S. Bank. (ECF No. 32 at 9-10.) The Court is therefore satisfied that it has personal jurisdiction over

PAGE 2 – FINDINGS AND RECOMMENDATION

As to the other remaining defendants, the County and the Bank of New York (the "nondefaulted defendants") reached agreements with the United States regarding priority (ECF Nos. 9, 16), which the Court approved by orders dated September 1 and September 24, 2020, respectively.[4] (ECF Nos. 11, 17.)

On March 23, 2021, the United States moved for default judgment against the defaulted defendants. (ECF No. 30.) In its motion, the United States explains that it is only seeking a monetary judgment against Stewart, and is not seeking a monetary or punitive judgment against the other defaulted defendants (i.e., Jeanine Stewart, U.S. Bank, God's Will Be Done, and Columbia Collection). (ECF No. 30 at 2.) Instead, the United States seeks a determination from the Court that none of these other defaulted defendants has a valid interest in the subject property. (*Id.*)

On April 5, 2021, the United States also filed a motion to appoint a receiver, which Bank of New York and the County do not oppose. (ECF No. 34.) The United States argues that the Court should appoint a receiver because it would "allow a qualified person, independent of the parties, to take possession of the subject property and ensure it is well maintained," and "ensure

---

the defaulted defendants. *See Rust v. CommerceFirst Bank*, No. 3:07-cv-00052, 2008 WL 2074071, at *3 (W.D. Va. May 14, 2008) ("Any interest in real property in the forum state is sufficient to convey personal jurisdiction so long as there is a direct relationship between that interest and the cause of action or the claim for relief. [Indeed,] [w]hen claims to the property itself are the source of the underlying controversy between the plaintiff and the defendant, it would be unusual for the State where the property is located not to have jurisdiction.") (simplified); *see also Tuli v. Rep. of Iraq*, 172 F.3d 707, 712-13 (9th Cir. 1999) (holding that a court "has an affirmative duty" to assure itself that it has personal jurisdiction over a defendant before entering default judgment).

[4] Bank of New York has also filed a foreclosure action in Clackamas County Circuit Court. The United States represents that Bank of New York is "ready to obtain judgment and advance a sale of the Subject Property"; Bank of New York "intends to proceed with obtaining a General Judgment of Foreclosure and Writ of Execution in the State Court Action"; and as of April 5, 2021, "an order of sale has not been issued in the State Court Action." (ECF No. 34 at 2-3.)

that there is not any damage to the property, which could reduce the potential sale value."[5] (ECF No. 34 at 3.)

## DISCUSSION

### I. DEFAULT JUDGMENT

Pursuant to FED. R. CIV. P. 55(b), the United States moves for entry of default judgment against the defaulted defendants. The Court recommends that the district judge grant the United States' motion.

#### A. Legal Standards

Federal Rule of Civil Procedure 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). It is well settled that upon the entry of default, the district court "accepts 'the well-pleaded factual allegations' of the complaint 'as true.'" *United States v. RiverCliff Farm, Inc.*, No. 3:16-cv-1248-SI, 2017 WL 3388172, at *1 (D. Or. Aug. 7, 2017) (quoting *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007)). However, the district court "does not accept as admitted facts that are not well-pleaded, conclusions of law, or facts relating to the amount of damages." *Id.* (citing *DIRECTV*, 503 F.3d at 854, and *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

After the Clerk enters default, the district court "may enter a default judgment against that defendant." *Id.* (citing FED. R. CIV. P. 55(b)). The Ninth Circuit has explained that a district court's decision about whether to enter a default judgment is a "discretionary one," and that the district court's decision should be guided by these seven factors (the "*Eitel*" factors):

---

[5] The United States represents that the subject property is "vacant or abandoned." (ECF No. 35 at 2.)

(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Id. (quoting Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980), and Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986)).

B.  **Factual Background**

Stewart failed to file timely income tax returns for the taxable years of 1998 through 2006. (Compl. ¶ 16; Decl. of Adam Morgan ("Morgan Decl.") ¶¶ 4-5.) According to an Internal Revenue Service ("IRS") revenue officer, as of March 31, 2021, the outstanding balance of the assessments against Stewart for the taxable years 1998 through 2006, including statutory accruals, is $3,007,713.24. (Morgan Decl. ¶ 21; see also Compl. ¶ 43, alleging that as of April 27, 2020, the outstanding balance of the assessments against Stewart for the years in question was $2,925,916.45).

1.  **Tax Assessment History**

After the IRS issued a notice of deficiency for the taxable years 1998 through 2003, Stewart petitioned the United States Tax Court for redetermination of his tax liabilities. (Morgan Decl. ¶ 6; Compl. ¶ 18.) On March 30, 2009, the United States Tax Court entered an order finding that Stewart owed income tax and penalties for the taxable years 1998 through 2003. (Morgan Decl. ¶ 6; Compl. ¶ 18.) As a result, a representative of the Secretary of Treasury made timely assessments against Stewart for the taxable years 1998 through 2003. (Morgan Decl. ¶ 7; Compl. ¶¶ 19, 22.) The first assessment was made on August 17, 2009. (Morgan Decl. ¶ 7; Compl. ¶ 19.)

After the IRS issued a notice of deficiency for the taxable years 2004 through 2006, Stewart petitioned the United States Tax Court for redetermination of his tax liabilities. (Morgan

PAGE 5 – FINDINGS AND RECOMMENDATION

Decl. ¶ 9; Compl. ¶ 20.) On January 27, 2009, the United States Tax Court dismissed Stewart's petition for lack of jurisdiction because he failed to pay the proper filing fees. (Morgan Decl. ¶ 9; Compl. ¶ 20.) Thereafter, a representative of the Secretary of Treasury made timely assessments against Stewart for the taxable years 2004 through 2006. (Morgan Decl. ¶ 10; Compl. ¶¶ 21-22.) The first assessment was made on May 29, 2009. (Morgan Decl. ¶ 10; Compl. ¶ 21.)

## 2. Bankruptcy Petitions and Tolling[6]

On February 12, 2010, Stewart filed a bankruptcy petition in the United States Bankruptcy Court for the District of Oregon. (Compl. ¶ 25; Decl. of Rika Valdman ("Valdman Decl.") Ex. 9 at 1-3.) On March 11, 2020, the court dismissed and closed Stewart's bankruptcy filing without a discharge, thus suspending the limitations period by twenty-seven days, pus six months. (Compl. ¶ 25; Valdman Decl. Ex. 9 at 2.)

On March 9, 2015, Stewart filed a second bankruptcy petition in the United States Bankruptcy Court for the District of Oregon. (Compl. ¶ 26; Valdman Decl. Ex. 10 at 1-3.) On April 1, 2015, the court dismissed and closed Stewart's second bankruptcy filing without a discharge, thus suspending the limitations period by twenty-three days, plus six months. (Compl. ¶ 26; Valdman Decl. Ex. 10 at 2-3.)

Given Stewart's bankruptcy filings and the initial assessment dates of May 29, 2009 and August 17, 2009, the United States timely filed this action against Stewart on June 26, 2020, as

---

[6] "The IRS generally has ten years from the assessment of a tax to collect the outstanding liability." *Severo v. C.I.R.*, 586 F.3d 1213, 1215 (9th Cir. 2009) (citing 26 U.S.C. § 6502(a)(1)). The Internal Revenue Code, however, "contains several provisions tolling the ten-year statute of limitations." *Id.* For example, the ten-year limitations period is suspended from the date of a bankruptcy filing until its dismissal, plus six months. *See United States v. Balice*, 505 F. App'x 142, 145 n.3 (3d Cir. 2012) ("[T]he limitations period was suspended from the date of each of Balice's bankruptcy filings until their dismissals, plus six months. Accordingly, her two bankruptcy filings suspended the limitations period for 1,553 days." (citing 26 U.S.C. § 6503(b))).

the ten-year limitations period, as tolled, did not expire until July 12, 2020 (for the 2004-2006 assessment) and September 30, 2020 (for the 1998-2003 assessment). (Mot. for Default J. at 13.)

### 3. The Subject Property

#### a. Ownership History

The United States seeks to foreclose its tax liens on real property located at 3040 SE Persons Ct., Milwaukie, Oregon 97267. (Compl. ¶ 28.) The relevant ownership history is as follows:

On or about September 8, 1992, Stewart's brother and sister-in-law, Merle Barton and Norma Jane Stewart, released and quitclaimed the subject property to themselves, as husband and wife, and to Stewart. (Compl. ¶ 29.) As a result of this transfer, Stewart received an undivided one-half interest and his brother and sister-in-law together received an undivided one-half interest in the subject property as tenants in common. (*Id.*) The quitclaim deed was recorded with the County on September 9, 1992. (*Id.*; Valdman Decl. Ex. 6 at 11.)

On or about October 21, 1997, Stewart's brother and sister-in-law conveyed their remaining interest in the subject property to Stewart, via a bargain and sale deed. (Compl. ¶ 30.) The deed was recorded with the County on October 27, 1997. (*Id.*; Valdman Decl. Ex. 6 at 12.)

On or about November 12, 1998, Stewart, as the sole owner of the subject property, conveyed a fifty percent interest to himself and transferred the remaining interest to his brother and sister-in-law, "as tenants by the entirety through a Statutory Bargain and Sale Deed." (Compl. ¶ 31.) The deed was recorded on November 13, 1998. (*Id.*; Valdman Decl. Ex. 6 at 13-14.)

On or about August 23, 1999, Stewart conveyed his fifty percent interest in the subject property, via a bargain and a sale deed, to AJM, a fictitious trust whose trustees are the Stewarts and whose business address was the same as the Stewarts' former Oregon address. (Compl. ¶¶ 6-

PAGE 7 – FINDINGS AND RECOMMENDATION

8, 32.) The deed was recorded with the County on August 25, 1999. (Compl. ¶ 32; Valdman Decl. Ex. 6 at 15-16.)

On or about October 28, 2002, Stewart's brother and sister-in-law transferred their fifty percent interest in the subject property, via a statutory warranty deed, to AJM "for purportedly $895,000 [in] consideration." (Compl. ¶ 33.) AJM therefore became the sole owner of the subject property, and the Stewarts remained the trustees of AJM. (*Id.*) The deed was recorded with the County on November 5, 2002. (*Id.*; Valdman Decl. Ex. 6 at 17-19.)

Between 2002 and 2008, Stewart purported to transfer the subject property in and out of AJM and CKT—another fictitious trust whose trustees are the Stewarts, and which is controlled by the Stewarts and the Stewarts' nominee or alter-ego—"for little or no consideration." (Compl. ¶¶ 6-8, 34.)

On or about October 17, 2008, AJM conveyed the subject property to Stewart, via a statutory bargain and sale deed, for "$1.00 in consideration." (Compl. ¶ 35.) The bargain and sale deed was recorded with the County on October 24, 2008. (*Id.*; Valdman Decl. Ex. 6 at 23-24.)

On or about May 1, 2009, and again on June 10, 2009, Stewart conveyed the subject property to himself and Jeanine Stewart, "as tenants by the entirety, through Quitclaim Deed." (Compl. ¶ 36.) The deed was recorded on May 4 and June 10, 2009. (*Id.*; Valdman Decl. Ex. 6 at 25-28.)

On November 10, 2015, the Stewarts filed a stipulated general judgment of dissolution of marriage/domestic partnership with the County, which resulted in Stewart receiving the entirety of the subject property on November 13, 2015. (Compl. ¶ 37; Valdman Decl. Ex. 11 at 1-10.)

### b. Notices of Federal Tax Liens

In accordance with 26 U.S.C. § 6323(f), the IRS filed a notice of tax lien with the County on December 7, 2009, regarding Stewart's federal income tax liabilities for the taxable years

PAGE 8 – FINDINGS AND RECOMMENDATION

1998 through 2006. (Compl. ¶ 55; Morgan Decl. ¶ 22.) On September 24, 2018, the IRS filed a second notice of tax lien with the County for these same tax periods. (Compl. ¶ 55; Morgan Decl. ¶ 22.)

### C. Analysis of the *Eitel* Factors

The first factor to consider in evaluating the United States' motion for default judgment is the possibility of prejudice to the United States if the Court does not grant the motion. Here, it is clear that "[t]he United States would suffer prejudice by being unable to collect unpaid taxes from a delinquent taxpayer." *United States v. Chapman*, No. 1:19-cv-01139-CL, 2020 WL 2069216, at *2 (D. Or. Apr. 2, 2020). Accordingly, the Court concludes that the first factor weighs in favor of granting the United States' motion.

The next factors to consider are the merits of the United States' substantive claims and the sufficiency of the complaint. In addressing these two factors, the pertinent "question is whether the United States is entitled to recover on the facts set forth in the complaint." *Id.* at *3. Here, the United States has demonstrated that its federal tax assessments against Stewart for the years at issue should be reduced to judgment, by demonstrating that despite receiving notice and demand for payments of assessments for the taxable years 1998 through 2006, Stewart has neglected, failed, or refused to pay the assessments, which remain due and owing.

Furthermore, the assessments against Stewart are based on, among other things, information reported by third parties and bank deposit analyses for the years in question, and are set forth in the "Form 4340, Certificate of Assessments, Payments and Other Specified Matters for Morse E. Stewart, for the taxable years 1998 through 2006." (Morgan Decl. ¶¶ 8, 11.) "A Certificate of Assessments and Payments is a proper means of establishing that assessments were properly made and that notices and demand for payment were sent." *United States v. Panter*, No. 1:11-cv-03052-CL, 2012 WL 2367369, at *4 (D. Or. May 24, 2012) (citation omitted). It is also

PAGE 9 – FINDINGS AND RECOMMENDATION

well settled that "[a]n assessment for unpaid federal taxes, when properly certified, is presumptively correct evidence of a taxpayer's liability, and the taxpayer has the burden to overcome this presumption by countervailing proof." *Id.* Stewart has submitted no countervailing proof here.

The complaint, as supported by declarations and exhibits, also shows that Stewart is the owner of the subject property, and that the United States has recorded notices of federal tax liens against Stewart, which attach to his interest in the subject property. Consequently, the United States has demonstrated that the federal tax liens against Stewart should be foreclosed through the sale of the subject property. *See Chapman,* 2020 WL 2069216, at *3 (same). The Court also notes that the defaulted defendants "had ample opportunity to claim an interest in the subject property, but [they have] not done so" (*id.*), and that the United States and the nondefaulted defendants, Bank of New York and the County, reached agreements as to priority. Thus, "the United States should be able to sell the subject property free of any interests [the defaulted defendants] may claim, and apply the proceeds towards [Stewart's] tax liabilities." *Id.* For these reasons, the second and third factors weigh in favor of granting the United States' motion for default judgment.

The fourth factor the Court must consider is the sum of money at stake in this action. The United States acknowledges that it seeks to collect a substantial amount of money (over three million dollars) from Stewart. Nevertheless, "the United States has shown why the tax assessments against [Stewart] accurately state his income tax liabilities, thereby articulating a concrete basis for its claims." *Id.* at *4. Further, Stewart "should not be entitled to evade a judgment because he owes a great deal, rather than only a little," and none of the defaulting defendants should be "entitled to evade a judgment simply because [they] chose not to appear in

this action." *Id.* Accordingly, this factor is neutral with respect to whether entry of default judgment is appropriate.

The fifth factor the Court must consider is the possibility of a dispute concerning material facts. Given the agreements reached as to priority and given the defaulted defendants' failure to avail themselves of the opportunity to assert their own claims to the subject property, the Court concludes that the fifth factor weighs in favor of default judgment. *See id.* ("Mr. Chapman and Ms. Fry both had ample opportunity to assert any claim in this proceeding and to provide testimony or evidence in support of any claim they may have. However, they chose not to do so. Therefore, this [fifth] factor weighs in favor of default judgment.").

The sixth factor the Court must consider is whether the default was due to excusable neglect. The record reflects that the United States properly served the defaulted defendants with the summons and complaint, and kept the defaulted defendants apprised of the developments in this case. Thus, the sixth factor weighs in favor of default judgment because the defaults were not the result of excusable neglect.

The seventh and final factor the Court must consider is the strong policy favoring decisions on the merits. The Court finds that this factor weighs in favor of default judgment because "[n]otwithstanding the strong policy presumption in favor of a decision on the merits, where [multiple defendants fail] to appear and respond as occurred here, a decision on the merits is impossible and default judgment is appropriate." *Id.*

In summary, the *Eitel* factors weigh in favor of granting the United States' motion for default judgment.

### D. Damages

The Court must separately consider damages because "[a]lthough a party's default conclusively establishes that party's liability, it does not establish the amount of damages." *Id.* at

*5 (citation omitted). According to the IRS revenue officer, as of March 31, 2021, the outstanding balance of the assessments against Stewart for the taxable years 1998 through 2006, including statutory accruals, was $3,007,713.24. (Morgan Decl. ¶ 21.) The Court concludes that these tax liabilities, supported by the United States' declarations and exhibits, are reasonable and supported by the record. *See Chapman*, 2020 WL 2069216, at *5 (making the same observations). The Court therefore concludes that the district judge should enter judgment for the United States in the amount of $3,007,713.24, plus statutory interest and other additions running from March 31, 2021, as provided by law.

E.     **Conclusion**

For the reasons stated, the Court recommends that the district judge grant the United States' motion for default judgment and enter the United States' proposed judgment. (*See* ECF No. 30-2 at 1-2.)

II.    **APPOINTMENT OF A RECEIVER**

The United States has also filed an unopposed motion to appoint a receiver, Mary Mayther-Slac, to take custody and arrange for the sale of the subject property. The United States explains that appointing a receiver would allow a qualified person, independent of the parties, to take possession of the subject property and ensure it is well maintained. The appointment will also ensure that there is no damage to the property, which could reduce the potential sale value.

"Pursuant to 26 U.S.C. § 7402, the district court has jurisdiction to appoint receivers, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws." *Melot v. Roberson*, No. 15-cv-00235, 2015 WL 9647669, at *5 n.9 (D.N.M. Dec. 3, 2015). Courts in this circuit have appointed receivers in similar cases where the United States seeks to enforce a tax lien. *See, e.g.*, *United States v. Newby*, No. 3:18-cv-05978-MJP, 2020 WL 7408026, at *1-3 (W.D. Wash. Dec. 8, 2020) (granting the United States' motion

PAGE 12 – FINDINGS AND RECOMMENDATION

to appoint a receiver where "good cause [was] shown"). Consistent with these authorities, the Court recommends that the district judge grant the United States' motion for appointment of a receiver and enter the United States' proposed order. (*See* ECF No. 34-1 at 1-6.)

## CONCLUSION

Based on the foregoing reasons, the Court recommends that the district judge GRANT the United States' motion for default judgment (ECF No. 30) and motion for appointment of a receiver (ECF No. 34).

## SCHEDULING ORDER

The Court will refer its Findings and Recommendation to a district judge. Objections, if any, are due within fourteen (14) days. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due within fourteen (14) days. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 3rd day of May, 2021.

*Stacie F. Beckerman*

HON. STACIE F. BECKERMAN
United States Magistrate Judge